IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA



MAR 1 6 2009

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By _____
Deputy Clerk

FRANCO WILLIAMSON, )
)
Plaintiff, )
)
v. ) No. CIV 07-167-RAW-SPS
)
KIM MILLER, et al., )
)
Defendants. )

## OPINION AND ORDER

This action is before the court on Defendants Kim Miller and Ken Grace's motions to dismiss and the court's own motion to consider dismissal of the case as frivolous under 28 U.S.C. § 1915. The court has before it for consideration plaintiff's third amended complaint [Docket #39], the defendants' motions [Docket #55 and 56], plaintiff's responses [Docket #59, 60, and 61], the parties' replies [Docket #64, 65, and 66], and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court [Docket #54], in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of DOC who is incarcerated at John Lilley Correctional Center, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at the Carter County Detention Center (CCDC) in Ardmore, Oklahoma. The defendants are Kim Miller, CCDC Nurse; Stephen Hutchins, CCDC physician; and Ken Grace, CCDC Sheriff.[1] Plaintiff has not served

---

[1] Plaintiff originally filed suit against Carter County Sheriff Harvey Burkhart, but Burkhart died on December 29, 2007. On April 11, 2008, Burkhart's successor Sheriff Ken Grace was substituted in his official capacity. *See* Fed. R. Civ. P. 25(d).

Defendant Hutchins.

Plaintiff alleges in Count 1 of his third amended complaint that Defendants Kim Miller and Stephen Hutchins failed to screen the health of incoming prisoners. He claims that on March 6, 2006, he and other CCDC inmates were diagnosed with tuberculosis, and plaintiff was in Stage Four of the disease when it was discovered. According to plaintiff, Inmate "Vincent Doe" was his cell mate for 72 hours in September 2005, and plaintiff also was placed in the same population as Doe from November 2005 until January 2006. Doe was observed sleeping excessively, not eating, and coughing up blood. From November 2005 until January 2006, plaintiff and other inmates complained about Doe to officers and sent a request to the jail administrator concerning Doe. All complaints and the request, however, went unanswered, until Doe was removed in January 2006. There was no medical unit in the detention center, so Doe was moved to C-Block, which still was in the inmate population. In February 2006 Vincent Doe was rushed to the hospital and diagnosed with tuberculosis. The Carter County Health Department ran TB tests on everyone in the facility, and eight inmates, including plaintiff, were diagnosed with tuberculosis.

In Count 2 plaintiff alleges Defendants Miller and Hutchins allowed untrained officers to dispense his medication, and the lack of a medication schedule jeopardized his health. Plaintiff claims he wrote numerous requests on this issue, all of which were unanswered. He then wrote to Carolyn Jones at the Carter County Health Department, and she told CCDC staff that if plaintiff missed his medication again, she personally would go to the Oklahoma State Health Department.

Plaintiff asserts in Count 3 that the defendants did not allow him to use the law library,

2

almost causing him to "mess up" his case. He claims in Count 4 that he was not permitted to exercise outside at the detention center, because of the shortage of guards.

**Special Report**

The special report states that, contrary to plaintiff's allegations that he shared a cell with Inmate Vincent Doe for 72 hours in September 2005, the record indicates plaintiff was not incarcerated in the detention center that month. Plaintiff apparently concedes this fact in his response to the special report, and states Vincent Doe was, instead, his cell mate in November 2005.

According to the special report, plaintiff was booked into the CCDC on November 10, 2005, to serve a three-day sentence on a citation for contempt of court in Carter County District Court Case No. CF-05-309. He was released on November 12, 2005, after completion of his sentence.

Plaintiff was booked into the detention center again on November 29, 2005, on charges of assault and battery with a dangerous weapon and possession of a firearm, after a prior felony conviction. On February 3, 2006, he entered a guilty plea to the crime of Unlawful Possession of a Firearm After Two Felony Convictions in Case No. CF-05-571, and on July 21, 2006, he was released to DOC custody to serve his sentence. He returned to the CCDC for proceedings in Carter County District Court Case No. CF-06-155 from August 28, 2006, to September 7, 2006.

Upon booking, incoming CCDC inmates are given a health screening in the form of a medical questionnaire that requests information about the inmate's health, including whether he has any communicable diseases. There is no testing for communicable diseases,

because the testing would be too costly and impracticable. Furthermore, there is no known state or federal requirement for TB testing in such facilities.

Inmate Vincent Doe was booked into the detention center on October 22, 2005. At the time of his booking, Doe indicated he had diabetes, but he did not disclose any other diseases on his medical questionnaire. According to the special report, the records showing plaintiff's and Doe's cell assignments during plaintiff's three-day incarceration in November 2005 have been lost or destroyed, so there are no records indicating the proximity of the two inmates from November 10-13, 2005.

On February 9, 2006, Inmate Doe presented to Defendant Dr. Hutchins, complaining he had been coughing up blood. Dr. Hutchins examined the inmate, noted no chest congestion, and treated him for an upper respiratory infection. Doe had not made any prior complaints about coughing up blood or other symptoms associated with tuberculosis, and there had not been similar complaints from other inmates. On February 12, 2006, other inmates in C-Block reported that Doe had been sick and was coughing up blood. When Doe was asked about this, he said he had been coughing up blood since February 10, 2006, and his treatment for an upper respiratory infection was continued. There is no record of the exact date, but sometime between February 18 and March 2, 2006, Doe's condition worsened, and he was transported to the emergency room at Mercy Memorial Hospital in Ardmore, Oklahoma. Because he was a DOC inmate, DOC decided to have him transferred to the Lindsay Municipal Hospital in Lindsay, Oklahoma. He was formally released to DOC on March 2, 2006.

The staff at Lindsay Municipal Hospital diagnosed Inmate Doe with active


tuberculosis and notified the CCDC of the diagnosis. CCDC Nurse Kim Miller immediately contacted the Carter County Health Department to set up tuberculosis skin tests, which were conducted on or about March 6, 2006. Approximately ten inmates, including plaintiff, tested positive. Because a positive skin test does not necessarily indicate infection with tuberculosis, he was sent for chest X rays on March 8, 2006. On March 20, 2006, plaintiff was diagnosed with Class 4, inactive, tuberculosis. According to the special report, this classification meant he had been infected, but he did not have the actual disease. The diagnosing physician ordered preventive therapy in a 270-dose course of 300 mg. INH daily and 50 mg. B6 daily. A daily dose of 600 mg. rifampin was added on April 6, 2006.

The special report states that, contrary to plaintiff's allegations, tuberculosis is not a common disease at the CCDC, and this incident is the only know instance of the disease at the facility. It also notes that plaintiff has been incarcerated in DOC on two prior occasions, and he could have been infected in one of those facilities.

The detention center does not have a law library, and there are no records that plaintiff ever requested access to a law library, legal materials, or legal assistance. Plaintiff did have access to appointed counsel in his criminal cases during the time periods relevant to his third amended complaint.

With respect to plaintiff's allegations about denial of exercise, the CCDC has an outdoor recreation yard, but it is unsecured, dilapidated, and unsafe to use. Inmates, however, have access to the day room where there is adequate space to perform any calisthenics they choose. The day room is open from approximately 7:00 a.m. to approximately 2:45 p.m., and again from approximately 3:30 p.m. until 10:30 p.m.

5

## Count 1

Plaintiff alleges in Count 1 of his complaint that he became infected with TB from another CCDC inmate, because the defendants failed to test incoming inmates for communicable diseases. The record shows that plaintiff was incarcerated in the CCDC as both a pretrial detainee and as a convicted prisoner. "Under the Fourteenth Amendment's due process clause, pretrial detainees . . . are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand County, Utah,* 119 F.3d 862, 867 (10th Cir. 1997) (citing *Martin v. Bd. Of Comm'rs of County of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990)).

To state a medical claim under § 1983, plaintiff must show he was "incarcerated under conditions posing a substantial risk of serious harm," and the defendant acted with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference means "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, plaintiff is not claiming the defendants knowingly placed him into a population with an inmate infected with TB. Instead, plaintiff contends the defendants should have tested all incoming inmates for the disease. It, therefore, is clear on the face of plaintiff's third amended complaint that the defendants were unaware that an inmate had TB, so they could not have been deliberately indifferent to plaintiff's health and welfare in this regard. *See Davis v. Stanley*, 740 F.Supp. 815, 818 (N.D. Ala. 1987) (holding the plaintiff failed to

state a claim for deliberate indifference for sheriff's alleged policy of failing to test all incoming inmates for AIDS). Furthermore, plaintiff's third amended complaint fails to indicate the defendants were deliberately indifferent to the health and well-being of the Carter County inmates in general. To the contrary, plaintiff admits that when the other inmate was diagnosed with TB, he and the other inmates promptly were tested. Plaintiff then was sent for further testing, and when he was diagnosed, he received the appropriate treatment.

**Count 2**

Plaintiff claims in Count 2 that the defendants allowed officers with no medical training to distribute medications, causing him to miss doses on several occasions. Plaintiff has not alleged the defendants were aware that allowing jailers who lacked medical training to dispense medications put him at substantial risk of serious harm, and that the defendants disregarded that risk. He, therefore, has clearly failed to state a claim under the *Farmer* standard. Plaintiff further has failed to allege he suffered any actual physical injury from having the non-medical officers dispense the medications. *See Reyes v. Hale County Jail*, No. 03-CV-180-C, slip op., 2003 WL 22670929, at *3 (N.D. Tex. Sept. 16, 2003) (plaintiff's allegations that fellow inmate was allowed to pass out medications did not demonstrate deliberate indifference, and the plaintiff failed to make an adequate showing of physical injury); *Mounce v. Harris*, No. 04-CV-550-KKC, slip op., 2006 WL 133571, at *14 (E.D. Ky. Jan. 17, 2006) (plaintiff who alleged the defendants failed to ensure that qualified jail officials administered his medications must demonstrate an injury as a result of the alleged deprivation); *Croney v. Fletcher*, No. 07-CV-42-KKC, slip op., 2008 WL 45413, at *2 (E.D.

Ky. Jan. 2, 2008) (plaintiff's allegations that medications were given to him by jail staff, rather than by trained medical professionals, did not state a claim under § 1983, absent any showing of physical injury). The court, therefore, finds plaintiff has failed to state a claim under Count 2.

**Count 3**

In Count 3 plaintiff asserts he was denied access to a law library, causing him to "almost mess[] his case up." He does not assert, however, that Defendants Kim Miller or Stephen Hutchins in any manner were involved in this alleged deprivation. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967 F.2d 423, 430 (10th Cir. 1992). Further, "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

With respect to Defendant Grace's liability, it is undisputed that access to the courts and the means to effectuate such access are fundamental constitutional rights. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). A prisoner, however, must demonstrate actual injury. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). "To do so, he must show that any denial or delay of access to the court prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). His claim that he "almost messed his case up" fails to meet this burden of showing an actual injury, so Count 3 fails.

**Count 4**

Plaintiff alleges in Count 4 that he was denied access to outdoor exercise while incarcerated in the CCDC. The record shows plaintiff was incarcerated in the CCDC for

8

three days in November 2005, and again from November 29, 2005, until he was released to DOC custody on July 21, 2006. He was returned to the CCDC for 11 days from August 28, 2006, until September 7, 2006.

> There is substantial agreement among the cases in this area that some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates, and some courts have held a denial of fresh air and exercise to be cruel and unusual punishment under certain circumstances. *None, however, has ruled that such a denial is per se an Eighth Amendment violation.*

*Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (per curiam) (citations omitted) (emphasis added).

Again, plaintiff does not allege Defendants Miller or Hutchins personally participated in the alleged denial of exercise, so they have no liability. With respect to Defendant Grace, the court finds the approximately 8-month period without outside exercise, while restrictive, is not sufficiently serious to rise to the level of a constitutional violation. *See Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (holding that "a factfinder might conclude that the risk of harm from *three years* of deprivation of any form of outdoor exercise was obvious and that [prison] officials disregarded that risk by keeping Fogle in administrative segregation") (emphasis added); *see also Ajaj v. United States*, 293 Fed. Appx. 575, 583-84, 2006 WL 3797871 (10th Cir. 2008) (holding that prisoner's denial of outdoor recreation his first year at the facility did not violate the Eighth Amendment).

Based on the foregoing reasons the court finds the allegations in plaintiff's complaint are vague and conclusory, and the allegations do not rise to the level of a constitutional violation. The Tenth Circuit Court of Appeals has consistently held that bald conclusions,

unsupported by allegations of fact, are legally insufficient, and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing. *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990); *Lorraine v. United States*, 444 F.2d 1 (10th Cir. 1971). "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980)).

The court authorized commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (e) of that statute permits the dismissal of a case when the court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. *Nietzke v. Williams*, 490 U.S. 319 (1989); *Yellen v. Cooper*, 828 F.2d 1471, 1475 (10th Cir. 1987).

**ACCORDINGLY,** this action is, in all respects, DISMISSED as frivolous.

**IT IS SO ORDERED** this _16th_ day of March 2009.

                                                  **RONALD A. WHITE**
                                                  **UNITED STATES DISTRICT JUDGE**